## DeVANE SIBLEY *v.* HARRY D. SIBLEY

[No. 31, October Term, 1946.]

*Decided December 12, 1946.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Walter V. Harrison* for the appellant.

*Charles W. Main* for the appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal by DeVane Sibley, the appellant, from an order of the Circuit Court of Baltimore City awarding the custody of the grandchild of the appellant, Harry D. Sibley, Jr., an infant eight years of age, subject to further order of the court, to the father of the infant, Harry D. Sibley, Sr., the appellee, who lived at Texarkana, Texas.

The infant was born October 23, 1937. His parents separated when he was eight months of age and he was brought by the appellee into the home of the grand-

parents in Baltimore where he lived until the passage of the order here appealed from. The father, the appellee, lived in the same home until he entered the armed forces of the United States in November, 1942. He was discharged from the Army on February 8, 1946. During that period he made an allotment of $42 a month for the support of the child in the home of its grandparents.

The appellee, Harry D. Sibley, Sr., born March 23, 1917, completed two and one-half years in high school prior to his withdrawal at the request of the school authorities. From that time until his entrance into the armed forces of the United States he held several positions. He was married in November, 1935, to one Rose Matthews, who obtained a divorce from him in 1939 on the grounds of adultery. At the time of this divorce the guardianship and custody of Harry D. Sibley, Jr., was awarded to the appellant DeVane Sibley, and Ruth Sibley, his wife, the grandparents of the child, at the request of the parents. The support was chargeable to the father of the infant with the right of both parents to see the child at all reasonable times subject to further order of the court. The report of the probation officer in this case states that, although the appellee was fined once on an assault charge, his conduct has been generally good and he appears to be sincere, intelligent, and sober. At the time of the hearing in this case he had about $1,900 in bank, $1,200 in war bonds, and the offer of a position. While in the Army he married on June 17, 1944, Miss Thelma Smith, 26 years of age and not formerly married, of Texarkana, Texas, a secretary who continued to work until March 15, 1946. She wants the child in her home and says that she will try to be a mother to him. They have no other children. According to the report of the probation officer, she is neat in her dress, is willing to assume the obligation of caring for the child, is in good health, and active in Sunday school work and has ability to deal with young people. At the time of the hearing in this case the appellee and his wife, Thelma Sibley, lived in Texarkana, Texas, where they had an apartment. They still live there.

The mother of the child, Rose M. Sibley, has remarried and has three other children. According to the report of the grandmother of the child, she has seen him only twice in the period of seven years, the last time being approximately five years ago.

The appellant, the grandfather, is an electrical contractor, 55 years of age, and has always earned an amount sufficient to meet his business and personal expenses. He has a comfortable home. He is industrious, honest, courteous, and aggressive, and is the master of his home. He and his wife have had six children. However, according to the report of the probation officer, he is a disciplinarian and his wife and some of the children, including the appellee here, claim that he is selfish, unreasonable and stubborn. He is very fond of the infant. He says that although his wife has said that she will leave him, if she does so and custody is awarded to him he will place the boy in a school such as McDonogh or St. Paul School. He has been in the habit of taking this infant to his farm in Pennsylvania very often over the weekends and there is some dispute in the family about the child not attending Sunday school on that account. He does not want his son to have custody of the child because he says he has no confidence in him due to his experience with his son in early years.

The grandmother, Ruth Sibley, testified that she is 53 years of age and she and her husband have had custody of the infant since he was eight months of age. She has had the responsibility of the child in the daytime, although her husband for quite a long time gave the child his breakfast. She says that she wrote to her son, the appellee, and told him that she was not well or able to care for the child. As a result of that letter the son came to her home and she wanted him to take the infant back with him. The grandfather objected to this. The grandmother says she is attended by doctors, her condition has grown steadily worse, and she does not feel able to look after the young boy. She says that her son can give him a home and thinks that he should have

him. She and her husband have had disputes over the child. She states the child has been troublesome in school and barely keeps up with his studies, but that his grandfather has recently been helping him with his studies every evening. She says she intends to leave her husband's home after the child leaves and further that although the home is comfortable, it is not very agreeable. It is admitted that the grandfather and grandmother are now separated.

The appellee claims that as a result of the letter received from his mother, he came on from Texarkana to take the child back with him. He further says that he loves his son and wants his custody. His father objected to this and said it would take a court order to release the child. As a result of the grandfather's refusal to let him have the infant, he filed the petition in this case for custody.

Although the natural right to custody of children is in the father, the courts in this State are primarily concerned in all custody cases with the welfare of the infant. *Piotrowski v. State*, 179 Md. 377, 381, 18 A. 2d 199; *Cockerham v. Children's Aid Society*, 185 Md. 97, 43 A. 2d 197. This is the primary consideration in this case and overshadows everything else.

In custody cases a grave responsibility is placed on the courts. The future of every infant is, of course, largely governed by its early training and environment. To say whether one or another close relative of an infant should have the custody is always a matter of serious concern. This Court on appeal can only exercise its best judgment from all of the facts presented in the case. We see none of the parties. The chancellor had the parties and the witnesses before him. He was able to observe their demeanor and general appearance while on the stand, to judge of their character, probable attitude toward and their probable influence over the infant. He also had the opportunity to talk to the infant. Unless there is some reason to the contrary, his findings ought not to be disturbed. *Barnard v. Godfrey*, 157 Md. 264,

145 A. 614; *Young v. Weaver,* 185 Md. 328, 44 A. 2d 748. There is no doubt that the appellant, the grandfather, has great affection for the child and it is natural for him not to want to be parted from his grandchild. It is unfortunate that such action is necessary. If custody is awarded to the grandfather the child will be in a home where there is no woman to give him the feminine care which every child needs. It would hardly be advisable to award the infant to the grandfather for the purpose of placing him in a boarding school. The chancellor, in his opinion in this case, stated that his observation of the second wife of the appellee, her statements and demeanor on the stand, led him to believe that it would be to the best interest of the infant to award the custody to the father, the court retaining jurisdiction. From all the facts in this case, Thelma Sibley seems to present the best prospect in the future life of the infant. We see no reason to disagree with the finding of the chancellor, who retained jurisdiction for the purpose of changing custody if such action is necessary. The order will therefore be affirmed.

*Order affirmed; costs to be paid by the appellant.*