## BRAY *v.* BRAY

[No. 293, September Term, 1960.]

*Decided June 12, 1961.*

The cause was argued before BRUNE, C. J., and HENDER-SON, PRESCOTT, HORNEY and MARBURY, JJ.

*Leonard S. Jacobson,* with whom was *Eleanor Crawford* on the brief, for the appellant.

No brief and no appearance for the appellee.

PRESCOTT, J., delivered the opinion of the Court.

This is another unfortunate and distressing case involving the custody of a minor child of divorced parents. The father

of the child was granted an absolute divorce from its mother, on the ground of the mother's having committed adultery, and he was also awarded custody of the child. The mother has appealed only from the order, wherein the custody of the child was awarded to its father.

There is little, if any, dispute in the facts of the case. The parties were married in August, 1955, and lived together, without serious conflict, until approximately January 1, 1958. One child, a female, Nancy Lynn, the subject of this controversy, was born as issue of the marriage on March 29, 1957.

Friction between the couple arose as early as January, 1958, and, although they shared the same household thereafter, they ceased to live as man and wife. The husband left the home in July, 1958, and went to live in the home of a friend. He contends that he had become suspicious of his wife's conduct with one Elliot Annable, his own close friend and co-worker. The wife denied any improper conduct with Annable and claimed that her husband left her without cause.

After the separation in July, the wife and her child continued to live at their home, but when it was sold, she took an apartment, and later moved in with her mother in Westminster, Maryland. During this period of time, the husband visited the child on week-ends, and in May, 1959, he took the child to Maine to live with his relatives. Thereupon, the wife filed a bill of complaint alleging desertion and abandonment, and praying a divorce, custody and other relief. In July, 1959, a supplemental bill of complaint was filed in behalf of the wife and in August, she regained custody of the child and took it back to Baltimore to live with her. The husband answered his wife's bill and countered with a cross-bill alleging adultery, naming Elliot Annable as the paramour, and praying a divorce, custody and other relief, which the wife duly answered.

The testimony was taken in open court. After the testimony was concluded the court dismissed the wife's bill for divorce, granted the husband a divorce *a vinculo matrimonii* on his cross-bill on the ground of adultery, and awarded cus-

tody of the child to the wife "subject to reconsideration on application of the father, William James Bray, after he has completed arrangements for the proper care of the said infant child." At this time, the father had not, in the opinion of the chancellor, completed satisfactory arrangements for the rearing of the child. A decree, as indicated above, was signed May 20, 1960, and on July 7, 1960, the husband petitioned the court to award him custody of the child inasmuch as he had "completed arrangements for the proper care of said infant child in accordance with the decree" of May 20, 1960. The wife answered this petition and the parties were heard on October 25, 1960, following a second investigation by the Probation Department.

During the period between the decree of May 20, 1960, and the hearing on October 25, 1960, the wife had married Elliot Annable and made her home with him in Sykesville, Maryland.

At this last hearing, the appellee offered a plan whereby his child would live with him in the home of friends, Mr. and Mrs. Leslie Showaker, with whom he had been residing. This couple had one child, a boy, age three. The child involved herein would be cared for by Mrs. Showaker during the day while the father is working, and he would be with the child every evening and night. The appellant proposed to have her daughter live with her in her home in Sykesville, with her former paramour and new husband, Elliot Annable.

The home of the Showakers contains a kitchen and utility room in the basement, one bedroom and a living room on the first floor and two bedrooms on the second floor. The bedroom on the first floor is occupied by the Showakers for their personal use, and their son sleeps in the living room at night upon a day bed. The Annable home is located at Sykesville and it contains a living room, dining room, kitchen and three bedrooms.

Miss Freiert, an investigator of the Probation Department of the Supreme Bench, made an investigation of the respective homes of the parties, and reported to the court. She testified

that the child appeared to be well cared for in the Annable home, and recommended to the court that she be permitted to remain there. Miss Freiert also found fault with the home of the Showakers on one of her visits there.

After hearing all of the parties and the officer of the Probation Department, the court stated that he had "no doubt [but that] the child will receive proper care in the home where Mr. Bray [the father] is living with Mr. and Mrs. Showaker," and passed an order awarding custody to the appellee.

The facts, as they have been set forth above, are somewhat meagre for an ordinary custody case. But this is due, mainly, to the manner in which the case is presented to us. The appellee filed no brief. The appellant's brief under a heading, "Agreed Statement of Facts," states the facts, as we have outlined them above. The appellant's appendix adds little by way of any additional information concerning the parties, or their mode of living. The record as it is given to us is wanting in many respects, if we are intelligently to review the decision made by the chancellor. To illustrate how scanty it is, we call attention to the fact that neither the age of the father nor that of the mother is given; no mention is made of his occupation or how much time he may spend with the child; whether or not there is a close and loving association between the father and child is not considered; and none of the details under which the mother committed adultery is stated, or in what manner, if at all, she has atoned the offense and established that she is now morally fit to rear her child, other than that she has married her former paramour and is now living with him. And this statement does not profess to point out all of the "vacant spots" in the record.

However, the facts of this case as they have been summarized above are so strikingly similar to two recent decisions of this Court that we consider them controlling here. These decisions were in the cases of *Hild v. Hild,* 221 Md. 349, 157 A. 2d 442, and *Parker v. Parker,* 222 Md. 69, 158 A. 2d 607.

In *Hild,* the evidence established that a mother of a seven-

year old boy had committed adultery with two men, and, at the time of the custody decree, had married the second one. There, as here, the Probation Department had investigated the respective homes, and recommended that the child's custody be awarded to the mother. The chancellor concluded that the best interests of the child demanded that he remain with the mother, and so ordered.

Judge Horney, in writing the opinion for this Court, called attention to the fact that the opinions expressed by probation officers may properly be considered by the court, but that they are not necessarily controlling (citing *Crump v. Montgomery,* 220 Md. 515, 154 A. 2d 802), and pointed out, as we have done so often, that, in the award of custody of a minor child, the Court's primary consideration is the best interest and welfare of the child. He then enumerated (221 Md. 357) some of the things that the Court may properly consider for the purpose of ascertaining what is likely to be for the best interest and welfare of the child, and then (221 Md. 358) stated the law thus:

> "Ordinarily, when a divorce is granted on the ground of adultery, the custody of the child is usually awarded to the innocent party, not as a matter of punishment or reward, but because it is assumed that the child will be reared in a cleaner and more wholesome moral atmosphere. *Swoyer v. Swoyer,* 157 Md. 18, 145 Atl. 190 (1929). The courts generally—in this state as well as those in other jurisdictions—refuse to permit children to be awarded to or remain with a mother who has been guilty of adultery. See the long line of cases beginning with *Hill v. Hill,* 49 Md. 450 (1878), and ending with *McCabe v. McCabe,* 218 Md. 378, 146 A. 2d 768 (1958). The rule is not absolute, however, for when the adulterous relationship has ceased and appears unlikely to be revived because the mother has changed her way of living, her past indiscretions may be overlooked. *Oliver v. Oliver, supra.* We think the past decisions of this Court require a strong showing to

be made to overcome the usual rule against awarding custody to an adulterous mother. The fact that she subsequently marries the paramour has not been regarded as meeting the requirements of such a showing. See *Pangle v. Pangle,* 134 Md. 166, 106 Atl. 337 (1919); *Stimis v. Stimis,* 186 Md. 489, 47 A. 2d 497 (1946); *McCabe v. McCabe, supra.* See also *Johnson v. Johnson,* 215 Ala. 487, 111 So. 207 (1927). Cf. *Hager v. Hager,* 309 Ky. 803, 219 S. W. 2d 10 (1949)."

The opinion ended by holding that the mother had failed to overcome the presumption against awarding custody to an adulterous wife, and awarding custody to the father.

In *Parker,* the facts were so similar to those in *Hild* that we considered *Hild* as controlling. Mrs. Parker had been granted a divorce on the ground of three years' voluntary separation and awarded the custody of her eight-year old son. She had lived in open adultery with her paramour, whom she married after the divorce. It was shown that the mother took generally good care of the child physically; that she had joined a church and the pastor thereof considered her a fit person to have the care and custody of her child; that she admitted her wrong and claimed to be sorry for her misconduct; and that she declared her desire to bring the child up properly. It was also shown that his school work had not been altogether satisfactory, that he frequently went to bed late at night, and that he did not get along well with the paramour's son, age 12. The chancellor, as above stated, awarded custody to the mother. Chief Judge Brune, for the Court, stated that since the problems presented by this case had been so fully considered in *Hild,* any extended discussion of the applicable law would be merely repetitious. He reiterated that the primary consideration to guide the Court was the welfare of the child; that "there [was] no absolute and inflexible rule as to the award of custody of a child of divorced parents"; and that "usually, the fact that the mother has been guilty of adultery will be taken as indicating that she is not a proper person to have custody, and a strong

showing must be made to overcome the usual rule or presumption against awarding custody to an adulterous mother." The opinion then stated that the mother had "failed to make the strong showing called for under the rule," and therefore the decree would be reversed and the custody of the child awarded to the father.

Although somewhat repetitious, it seems clear from these decisions and the authorities cited therein, as well as any number of previous decisions of this Court, that the primary consideration of the Court in a custody case is the welfare of the child, and each case must be determined by its own particular facts. There are many factors that may properly be considered in determining what are the best interests and welfare of a child, when its custody is involved. Among these is the fact, if shown, that its mother has committed adultery. The fact that she has committed adultery does not constitute an absolute and inflexible bar to her being awarded custody (221 Md. 358; 222 Md. 75), for when the adulterous relationship has ceased for a reasonable period of time so as to render it unlikely that it will be revived, and the mother has changed her way of living and demonstrates that she is a fit and proper person to raise her child in a clean and wholesome moral atmosphere, then her past indiscretions may be overlooked in considering the award of custody. But, when it is shown that the mother has committed adultery, the courts in this state (see the long line of Maryland cases cited in footnote 4 of the *Hild* case) and elsewhere usually award the custody of the children to the innocent party (provided he be a fit and proper person), not as a punishment or reward, but upon the assumption, which bears directly on the children's welfare, that they will be reared in cleaner and more wholesome moral surroundings. And the mother, who has been shown to have committed adultery and who claims to have mended her ways and to be a fit and proper person to raise a child, must make "a strong showing" to overcome the usual rule against awarding custody to an adulterous mother; and, although the fact that she has subsequently married her paramour may be considered in determining her

fitness, it, alone, will not be regarded as meeting the requirements of such a showing.

In the case at bar, the appellant makes no attempt at a "strong showing" to overcome the usual rule. As far as the record discloses, she contents herself with a showing that she has married her paramour, is living in, perhaps, a slightly larger house than the father, and that the child is receiving good care physically. The chancellor found that the child would receive proper care in the custody of her father, to whom he awarded custody, and we are unable to say that his ruling was erroneous.

*Order affirmed, with costs.*