## GLICK *v*. GLICK

[No. 325, September Term, 1962.]

*Decided July 11, 1963.*

*Harold Buchman* for appellant.

*Irving A. Levine* for appellee.

SYBERT, J., delivered the opinion of the Court.

On May 25, 1960 the appellee, David Glick, was awarded a divorce a vinculo matrimonii from the appellant, Ruth Glick (now Ruth Shaw), on the ground of her adultery, and by the same decree he was awarded custody of their two sons, aged five and seven. No appeal was taken from that decree. Several weeks later the appellant filed a petition charging interference with her visitation rights and on July 28, 1960 the Circuit Court modified the original decree by enlarging those rights. On September 27, 1961 the appellant filed another petition alleging that she met the "standards of a fit and proper mother", and that it would be in the best interest of the children to transfer their custody to her. After holding several extensive hearings, and filing an interim order specifying temporary visitation rights, the Chancellor on July 25, 1962 denied the appellant's petition for custody, although liberalizing her visitation rights. This appeal is taken from the order denying custody.

At the hearings the following facts were before the Chancellor (who had also presided in the divorce case). After the divorce and the award of custody to the appellee, the appellant, on July 9, 1960, married Dr. Daniel Shaw, the co-respondent named in the divorce proceedings. Dr. Shaw is a practicing dentist in Baltimore City and has two sons, twelve and seven, who are in the custody of his divorced first wife. The Shaws now live in a spacious home in Baltimore County, and a number of neighbors testified at the hearings that they were highly

regarded in their community, ideally mated, and had excellent relations with their respective children. While one of these neighbors was on the stand, the Chancellor reminded counsel that the divorce decree recited the court's belief that both Dr. Shaw and the present Mrs. Shaw (then Mrs. Glick) had committed perjury in their testimony in the divorce case, as well as adultery. The Chancellor added that the court had felt, although the decree did not so recite, that the perjury was committed because of the then Mrs. Glick's efforts to obtain custody of her children.

The appellee also remarried on October 7, 1961. His present wife has two daughters, thirteen and nine, by a prior marriage, who live with the Glicks. Previous to his remarriage the appellee and his children had lived in the home of his parents, at first in the same living unit, and later in a separate living unit in the same building. While the appellee was at work the children were cared for by a domestic employed for that purpose, and also received attention from their grandparents and two aunts who lived close by. Although the appellee and his second wife were living in less commodious quarters than the Shaws at the time of the hearings, they testified that they were to move into a newly purchased four bedroom house in a good neighborhood immediately after the last hearing below.

The appellant had had custody of the children after the separation of the parties. She claimed that immediately upon their transfer to the appellee as provided in the divorce decree, they demonstrated hostility to her although normal relations had existed prior thereto. According to her, the appellee interposed every conceivable barrier to the exercise of her visitation rights. The appellee voiced a similar complaint against the appellant with respect to the period when she had had custody of the boys before the decree. After hearing a number of witnesses for each side in two separate days of testimony (February 19 and March 1, 1962), the Chancellor interviewed the two boys privately in chambers. Thereafter she stated that she found the boys to be attractive, intelligent, normal children, but confused by the changes and new relationships occasioned by the divorce and remarriage of both parents. She announced, in effect, a trial period of some months during which the boys

would be left with their father, but during which the mother should have them more frequently, including several weeks in the summer, and she admonished the parents and step-parents to exercise a great degree of consideration and cooperation with respect to the visitations, to the end that the boys might become adjusted to the existing situation. The Chancellor passed an interim order setting out in detail the visitation periods.

The hearing was resumed on July 16, 1962. The Chancellor was told that the prescribed visitation schedule had been adhered to and that normal conditions between the mother and children had developed. The children, all parties agreed, have adapted to their stepmother, are doing well in school, and profess love and affection for their parents and step-parents. Both have received above-average grades in school and get along well with their classmates. The appellee has taken an active interest in their adjustment to school as well as in their progress, and has attended all the PTA and other school meetings and has maintained contact with their teachers. Insofar as religious training is concerned, the appellee has been a frequent participant in religious services for a number of years, and his present wife joins him in this activity. The appellee testified that he is anxious for the boys to receive religious training, and at the time of the hearing they were also attending services regularly. The appellant, on the other hand, had been rather infrequent in her religious participation, and did not join a congregation until after the filing of her petition to modify the custody decree. The same is true of Dr. Shaw, her new spouse, whose religious participation, the testimony shows, was even less frequent than that of his wife. Testimony was adduced to show that the appellee is a fit person to have custody of the children.

At the conclusion of the testimony the Chancellor stated in effect that she found no significant change in the situation of the parties since the divorce decree, and that on the basis of the testimony she did not feel that she could make any change in the custody of the children. She later signed the order denying the appellant's petition, which is the subject of this appeal.

Preliminarily, the appellant argues that the Chancellor misconceived the test to be applied in cases such as the present one when she stated that the appellant had made no "strong showing" that the appellee was unfit to have the custody of the children. However, we think the Chancellor made it abundantly clear, both in her remarks throughout the case, and at the close of the hearings, that the determinative factor upon which she intended to, and did, decide the issue of custody was the best interests of the children. Hence we find no merit in this contention.

This Court has stated many times that the paramount consideration in determining to whom the custody of a child should be awarded is the best interests and welfare of the child. *Winter v. Crowley, Jr.,* 231 Md. 323, 190 A. 2d 87 (1963); *Mason v. Mason,* 228 Md. 387, 179 A. 2d 897 (1962); *Bray v. Bray,* 225 Md. 476, 171 A. 2d 500 (1961); *Hild v. Hild,* 221 Md. 349, 157 A. 2d 442 (1960). Ordinarily, unless the mother is an unfit person, when other things are equal preference is given to her in awarding the custody of young children as she is considered the natural custodian of the young. *Parker v. Parker,* 222 Md. 69, 158 A. 2d 607 (1960); *Hild v. Hild, supra; Roussey v. Roussey,* 210 Md. 261, 123 A. 2d 354 (1956). However where a divorce is granted on the ground of the mother's adultery, the custody of the children is ordinarily awarded to the father, if he is a fit and proper person. *Parker v. Parker, supra; Hild v. Hild, supra.* The reason underlying this rule is not to punish the mother or reward the father, but rather is based upon the assumption that when the mother has committed adultery this is a persuasive indication that she is not a proper person to have custody of her children, and a strong showing is necessary to overcome this presumption. *Wood v. Wood,* 227 Md. 112, 175 A. 2d 573 (1961); *Parker v. Parker, supra; Hild v. Hild, supra.* The fact that she has married her paramour is, alone, insufficient. *Bray v. Bray, supra.*

The facts in the case before us are similar in many respects to those in the recent case of *Winter v. Crowley, Jr., supra,* and we think that case controls the instant situation. In *Winter,* a custody case, the appellee-husband had been awarded a divorce a vinculo matrimonii from the appellant on the ground

of her adultery, as well as the custody of their four children. About eleven months later the ex-wife filed a petition to modify the custody provisions of the decree on the ground that her circumstances had changed. She offered testimony to show that she had remarried (the man not being the paramour), that she was leading an entirely proper life and was a good housekeeper, and that she and her new husband were taking good care of a friend's two young children who were living with them as foster children. A number of persons testified that in their opinion the mother was a fit person to have custody of her children. On the other hand, the father had had a mental breakdown and had made some attempt at suicide. However, his condition, in the opinion of a reputable psychiatrist, was caused by the wife's adultery and the breaking up of the home by the wife, and at the time of the custody hearing the father was well on his way to complete recovery. In every other respect the father was shown to be a fit and proper custodian of the children.

In that case, Chief Judge Brune, speaking for the Court, found that a review of the evidence did not warrant the conclusion that the Chancellor's finding of fact that the father was a fit person to have custody of the children was clearly erroneous under Maryland Rule 886 a. The Chancellor's second finding, that the mother had not made a strong enough showing of having mended her ways, was found to be more debatable. However, at p. 330 of 231 Md., Judge Brune said: "Even if we were to assume * * * that the second finding was clearly erroneous and that the mother has made a strong enough showing of a change of ways to overcome the presumption arising from her adultery, we think that the Chancellor's third and determinative finding that it is to the best interests of the children to remain in the custody of the father is not to be disturbed on the evidence in the case." After citing *Pangle v. Pangle,* 134 Md. 166, 106 Atl. 337 (1919), and *Townsend v. Townsend,* 205 Md. 591, 109 A. 2d 765 (1954), for the proposition that in order to justify transferring the custody of a child from the father to whom it had been awarded to the mother who had been guilty of adultery very strong evi-

dence of the propriety and wisdom of such a course is required, Judge Brune said (at p. 330 of 231 Md.) :

> "To the reasoning of the cases just cited which puts the emphasis mainly on the mother's past dereliction, we may add that, assuming that the mother here has genuinely reformed, we think that a change of custody is not desirable unless there is some strong reason for it. These children have gone through the very disturbing experience of the separation of their parents and of their own separation from one parent. To repeat the latter process by separation from the parent who now has their custody and is fit to have it, without some clearly apparent benefit to the children to be gained thereby would, in our opinion, be definitely contrary to their best interests.* * *"

We think the remarks and the conclusion just quoted are equally appropriate in the instant case. On the evidence presented, we cannot conclude that the Chancellor's findings of fact that the appellee is a fit person to have custody of the children and that it is to their best interests to remain with him were clearly erroneous. The Chancellor had the opportunity to observe the witnesses, some of whom had also been heard by her at the divorce trial. From our review of the record there is no indication that the best interests of the children demand any radical modification of the original custody decree. The testimony indicates that the appellee and his present wife have a comfortable, adequate home, show sincere interest in the academic, religious and moral development of the children, and in general appear to be good parents. While the appellant's behavior subsequent to the divorce may indicate some degree of rehabilitation, and that she has been a "kind, loving, understanding mother" (as the Chancellor stated), these facts, in the absence of any change in conditions which would indicate that the present custody arrangement is unsatisfactory, are not conclusive. Hence the order appealed from will be affirmed.

*Order affirmed; the appellant to pay the costs.*