## PALMER *v.* PALMER

[No. 240, September Term, 1964.]

*Decided April 12, 1965.*

The cause was argued before HAMMOND, HORNEY, MAR-BURY, OPPENHEIMER and BARNES, JJ.

*Edwin A. Lechowicz,* with whom were *Biener & Connell* on the brief, for the appellant.

*Ralph S. Greil* and *J. Louis Shavrick* for the appellee.

MARBURY, J., delivered the opinion of the Court.

This is an appeal from an amended decree dated May 8, 1964, awarding guardianship and custody of a minor child to the mother incident to the granting of a divorce *a vinculo matrimonii* to the father on the ground of the wife's adultery.

The pathetic facts of this case unfold a story which may be summarized as follows. The parties were married in 1954, a son, Douglas Gordon Palmer, was born of the marriage and was seven years of age at the time of the taking of testimony in open court. During the first years of their marriage, the parties lived together normally, making their home in Prince George's County. On January 5, 1958, the husband was seriously injured in an automobile accident, and as a result, he was hospitalized for nearly two and a half years, being discharged in 1960 as a paraplegic, paralyzed from the waist down and unable to walk. For nearly two months, he returned to live with his wife and son until she left him alone in his helpless condition, taking with her the minor child. The husband then went to live with his sister and brother-in-law in Pelham, Georgia, where he remained until returning to Anne Arundel County, where his wife was then living, for the purpose of filing suit for divorce on the ground of her adultery, and for custody of his child.

The record clearly disclosed that the wife had become an adulteress. By her answer to the bill of complaint filed by the husband, she admitted committing the crime of adultery. In addition, she had given birth to a child which was fathered by her paramour. A witness testified to being an eyewitness to events which would indicate that the wife had committed adultery in a wooded area near Gambrills, Maryland. Another witness testified that he had sexual relations with her during the time when she was married to appellant, although she denied having had illicit relations with any one except her paramour.

Furthermore, the record indicates that she was a frequent visitor to a tavern which was described by a representative of the Anne Arundel County Welfare Board in its report as having a "reputation in the neighborhood for violence and sexual side lines." The wife admitted that she has taken the minor son to this tavern on some of her visits there.

In addition to the wife's adulterous conduct and her frequenting of an undesirable tavern, the record shows that she interfered with and discouraged contacts between the father and his son. Also, the child lived in the poorest surroundings in a small, three room trailer in an isolated area, occupied by the mother, Douglas, the former paramour (they were married on February 8, 1964), and their four month old daughter. Further, testimony indicated that she had left the child without adult supervision. The Welfare Board reported that Douglas' progress in school was poor, with a low attendance record, and as a result he would have to repeat the first grade. The mother did not keep informed nor was she aware of his school progress, and ignored requests by the teachers for cooperation in helping in his educational development.

On the other hand, evidence showed that the father has attempted to continue contact with his son in spite of financial difficulties, his physical condition, and the actions of the wife. He had sent gifts to Douglas since the time of the separation. Although his income is derived from social security, it would be permanent and sufficient to provide for the child. He plans to take his son to his sister's home in Georgia. There, the Department of Family and Children Services of Mitchell County reported that an investigation was made of the home environment into which the father proposes to take the child, and recommended it as being suitable and adequate. That Department further stated that this family would welcome the child into their home willingly and are able to assist the father in raising him. It is also significant to point out that the Anne Arundel County Welfare Board, after a complete investigation, recommended to the court below that custody of the minor child be awarded to the father.

Based upon the foregoing facts and circumstances the appellant contends the court erred in awarding the custody of the

minor child to the adulterous mother where the evidence was uncontradicted that he was an entirely fit and proper person and worthy of the child's custody. We agree.

The overriding consideration in determining to whom the custody of a child should be awarded is, we have consistently held, the best interests and welfare of the child. *Ferster v. Ferster,* 237 Md. 548, 207 A. 2d 96; *Wallis v. Wallis,* 235 Md. 33, 200 A. 2d 164; *Glick v. Glick,* 232 Md. 244, 192 A. 2d 791; *Hild v. Hild,* 221 Md. 349, 157 A. 2d 442. A correlative rule is if the mother is a fit and proper person to have custody and other things are equal, she is usually awarded the custody of children of tender years. *Wallis v. Wallis, supra; Parker v. Parker,* 222 Md. 69, 158 A. 2d 607. Where the mother is not a fit and proper person, custody is awarded to the father, provided he meets the test of being fit and proper, and, if not, to some other person. If the mother is shown to be an adulteress, a strong presumption arises that she is not a fit and proper person to have custody. To overcome this presumption, a strong showing must be made of facts and circumstances which indicate that the mother is, in fact, nevertheless fit and proper. Such rules are not to punish a wayward parent nor reward a virtuous one. They are based upon the presumption that adultery is a highly persuasive indicium that the guilty party does not meet the test, when a choice must be made between parents, of which is the better suited to bear responsibilities of rearing the minor child. *Wallis v. Wallis, supra.*

The rule is not absolute. When the adulterous relationship has ceased and appears unlikely to be revived because the mother has changed her way of living, her past indiscretions may be overlooked and she may be given the custody of a minor child. See *Wood v. Wood,* 227 Md. 112, 175 A. 2d 573; *Oliver v. Oliver,* 217 Md. 222, 140 A. 2d 908. However, the past decisions of this Court require a strong showing to be made to overcome the usual rule against awarding custody to an adulterous mother. The fact that she subsequently marries her paramour has not been regarded as meeting the requirements of such a showing. *Hild v. Hild, supra; McCabe v. McCabe,* 218 Md. 378, 146 A. 2d 768.

In the case at bar, the adulterous conduct of the mother was

conclusively shown. Thus, the presumption against awarding custody to her is raised and had to be overcome if she was to have custody of her child. Here, appellee made no attempt at a "strong showing" to overcome the prevailing rule, but was content to point out that she was about to marry her paramour, which she in fact did, as indicated above. Aside from her adulterous conduct the evidence in this case disclosed that she was unfit to have custody of this child. Her frequenting of an undesirable tavern where she took the boy, her failure to supervise him, her indifference to his school progress, the poor living conditions in which she maintained him, and her interference with contacts between the child and its father, all point to her unfitness. Significantly, although not necessarily controlling, the representative of the Anne Arundel County Welfare Board, after making a complete and detailed investigation of the parties and circumstances involved in this case, recommended to the court that custody be awarded to the father. It was shown that the father, although disabled, was a fit and proper person, and that he can provide a wholesome and adequate home for his son. No criticism of his character or morals was made and no fault was found with the environment to which he would take his son, which had been approved by the welfare department in Georgia. We hold, therefore, that the chancellor was in error in awarding guardianship and custody of the child to its mother, and the case must be remanded for the passage of a decree awarding guardianship and custody to the father, with reasonable rights of visitation to the mother.

> *Amended decree reversed and case remanded for the passage of a decree in accordance with this opinion. Costs to be paid by the appellant.*