## KAUTEN *v.* KAUTEN

[No. 233, September Term, 1969.]

*Decided February 11, 1970.*

The cause was argued before HAMMOND, C. J., and BARNES, FINAN, SMITH and DIGGES, JJ.

*C. Jefferson Dotson* for appellant.

*George E. Andrews,* with whom were *Robert J. Schick* and *Andrews & Schick* on the brief, for appellee.

FINAN, J., delivered the opinion of the Court.

This case is before us on appeal from a final order of the Circuit Court for Prince George's County. The order arose from a divorce proceeding in which the husband, appellant, was granted a divorce *a vinculo matrimonii* on the grounds of his wife's adultery while she was awarded custody of their daughter. It is the custody decision which is being appealed.

The parties to this dispute were married October 4, 1961, and the child whose custody is involved was born February 5, 1964. On October 19, 1967, the appellant was granted a divorce *a mensa et thoro* from the appellee, his wife, on grounds of desertion. Custody was awarded to appellee. Although unknown at the time of the first custody hearing, the appellee, a white woman, was eight months pregnant, the putative father being black. The appellee gave birth to the child on November 19, 1967.

On November 22, 1968, a hearing for a divorce *a vinculo matrimonii* was held, and on June 20, 1969, the order was issued granting the appellant the divorce and continuing custody in the appellee.

The legal standard to be applied in custody cases is quite clear, the best interest of the child being the determinative factor in making the award. *Orndoff v. Orndoff*, 252 Md. 519, 250 A. 2d 627 (1969) ; *Shanbarker v. Dalton*, 251 Md. 252, 247 A. 2d 278 (1968) ; *Breault v. Breault*, 250 Md. 173, 242 A. 2d 116 (1968). While simple to state, application of the rule is often quite difficult for an appellate tribunal which has before it only the transscribed record. For this reason the Court has established certain principles for better application of the legal standard to the facts at hand. For example it will be a rare occurrence when a young child will be taken from its mother if she is a fit person and all other things are equal. *Hild v. Hild*, 221 Md. 349, 357, 157 A. 2d 442 (1960). This is true even though the mother has been guilty of adultery. *Shanbarker v. Dalton, supra.* Another common principle is that a person who has committed adultery

will have the burden of proving his fitness. *Insogna v. Insogna,* 229 Md. 33, 181 A. 2d 677 (1962) ; *Palmer v. Palmer,* 238 Md. 327, 207 A. 2d 481 (1965) ; and *Cornwell v. Cornwell,* 244 Md. 674, 224 A. 2d 870 (1966). Perhaps the most often applied rule of interpretation is that the chancellor's findings of fact should be given great weight since he had the parties, witnesses and child before him. *Holcomb v. Holcomb,* 255 Md. 86, 256 A. 2d 886 (1969) ; *Daubert v. Daubert,* 239 Md. 303, 211 A. 2d 323 (1965) ; and *Sibley v. Sibley,* 187 Md. 358, 50 A. 2d 128 (1946).

Reviewing the evidence in the present case, it would seem that either parent can support an adequate home. This view is confirmed by a report from the Department of Juvenile Services. There was also evidence that, ten years prior to this litigation, when he was seventeen years of age, the father spent seven months in Spring Grove Hospital because of mental instability. Also, that upon one occasion, after their separation, he threatened the wife that he would solve their problems with a .38 revolver. The wife, however, admitted that she did not consider him a violent person.

The child involved has had a history of medical problems and suffers from a serious kidney ailment. In light of the child's youth and the close attention she requires it is not surprising that the chancellor awarded custody to the mother at the original hearing on October 19, 1967, since other factors being equal the mother will usually be given a young child.

Appellant's main contention seems to be that once the adultery was discovered, then the wife should not be considered a fit person to have custody of the child. As we noted above, the fact of adultery does create a˙ presumption against fitness. However, the presumption is rebuttable and we believe the chancellor was justified in finding that the appellee has met this burden. The fact is that the adulterous activity was committed prior to the original hearing. Evidence has been introduced to show that the appellee had ceased all relations with her para-

mour and had undergone a sincere conversion of her beliefs. Since the fact of adultery was not known at the first hearing, we think the chancellor was entitled to consider it at the later hearing. He did so and concluded that she was a fit person who could further the best interests of the child. We do not believe he abused his discretion in so finding.

The final issue raised by appellant concerns the allegedly deleterious effects the child might suffer from the discrimination which might befall her younger half sister who is half white. The simple answer to this contention is that such potential problems are only one factor in determining where the best interests of the child lie. The chancellor was aware of the situation and still granted custody to the mother. He noted that even if the father were to be granted custody, the father was agreeable to the mother's having the right to have the child visit with her on weekends. Thus, the child would be bound to become aware of the situation and would not be shielded from any social problems which might arise. In this regard, we are mindful that a court of equity maintains continuing jurisdiction over custody cases and can change custody if a change in condition indicates that the child's welfare requires it. We are living in an era of social transition and no one can predict what may or may not be the attitudes of people a few years hence. Under the facts and circumstances of this case, we do not think that the decision of the chancellor was wrong as a matter of law.

*Decree affirmed, appellant to pay costs.*