475 A.2d 1180

**Ronald Hayes ELZA**

v.

**Susan ELZA.**

**No. 3, Sept. Term, 1984.**

Court of Appeals of Maryland.

June 6, 1984.

Ronald L. Spahn, Ellicott City, for appellant.

Thomas J. Aversa, Jr., Pasadena, for appellee.

Argued before MURPHY, C.J., ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ., and MORTON, JAMES C., Jr., Retired, Specially Assigned, J.

JAMES C. MORTON, Jr., Retired, Specially Assigned Judge.

The question we confront in this case is whether the chancellor in a child custody proceeding erred in basing his award of custody to the mother solely on the maternal preference presumption. We conclude that reliance on this presumption contradicts the clear, unambiguous language of Maryland Code (1957, 1983 Repl.Vol.) Art. 72A, § 1, which states in pertinent part: "[I]n any custody proceeding, neither parent shall be given preference solely because

of his or her sex."[1] Therefore, we shall vacate the judgment below and remand the case for further proceedings in accordance with the following opinion.

Ronald and Susan Elza were married in December 1974. They had one child, Shannon, who was born in March 1978. Although both husband and wife originally were from the Glen Burnie area, during their marriage they lived in Montross, Virginia. The parties were separated on March 18, 1983, when Mrs. Elza, with Shannon, moved from the marital residence to her parents' residence in Riviera Beach, Maryland.

Mrs. Elza filed a petition for custody of a minor child on May 31, 1983. Mr. Elza subsequently filed an answer to the petition as well as a counter bill for custody of Shannon. A hearing was held in the Circuit Court for Anne Arundel County on June 28, 1983, Judge Robert Heise presiding. The testimony established that Mrs. Elza had not worked since her daughter's birth and had devoted her time to caring for the child. Further, Mr. Elza, a 100% disabled veteran, was not employed but spent approximately forty hours a week in community-related activities. He declared that if he were awarded custody, he would devote all of his time to Shannon's care. In addition, there was evidence that the tension between her parents had affected Shannon in a physiological way, but that these symptoms had dissipated since Mrs. Elza had removed her from the marital home. Moreover, there was evidence that although Shannon had been content in the home in Montross, Virginia, she was becoming adjusted to living at her grandparents with her mother.

---

1. Neither party raised the issue whether application of the maternal preference doctrine in child custody proceedings violates this State's Equal Rights Amendment, embodied in Article 46 of the Maryland Declaration of Rights. Therefore, we will not address this question. We note, however, that this case involves the same provision which was before this Court in *Rand v. Rand,* 280 Md. 508, 516, 374 A.2d 900 (1977) (clear language of Art. 72A, § 1 combined with adoption of the ERA mandated conclusion that "Child support awards must be made on a sexless basis.").

After all testimony had been introduced, the chancellor stated, "I can't find anything wrong with either mother or father ... they are apparently both devoted to the child. And ... in a sense ... interested in what's best for the child." Nevertheless, the chancellor concluded:

"Both parties being equal here, I can't find that either party is not entitled to have the child. I suppose I am old fashioned in one sense ... but it still seems to me that if it's a five year old ... all other factors being equal ... that in that case, the child should go with the mother ....

"But, as I understand the law, why, no preference is given to either party. It's just the Court's opinion that under the present conditions ... we do know that the child has improved by being brought up here ... but I have a hunch that that was because we got the two parties separated."

The chancellor signed a written order awarding custody of Shannon to Mrs. Elza on July 8, 1983. Mr. Elza noted a timely appeal to the Court of Special Appeals. Because of the important question raised, this Court granted a writ of certiorari prior to consideration by the intermediate appellate court.

This Court set forth the boundaries of appellate review applicable to child custody cases in *Davis v. Davis*, 280 Md. 119, 372 A.2d 231, *cert. denied*, 434 U.S. 939, 98 S.Ct. 430, 54 L.Ed.2d 299 (1977). In that case, we examined the extent to which Maryland Rule 886 (applicable to this Court) and Rule 1086 (applicable to the Court of Special Appeals), which govern the review of cases tried by a court without a jury, control in child custody disputes. Our analysis resulted in the conclusion that three distinct standards of appellate review apply to such matters. They are as follows:

"When the appellate court scrutinizes factual findings, the clearly erroneous standard of Rules 886 and 1086 applies. If it appears that the chancellor erred as to matters of law, further proceedings in the trial court will ordinarily be required unless the error is determined to be harmless. Finally, when the appellate court views the

ultimate conclusion of the chancellor founded upon sound legal principles and based upon factual findings that are not clearly erroneous, the chancellor's decision should be disturbed only if there has been a clear abuse of discretion." 280 Md. at 125–26, 372 A.2d 231 (footnote omitted).

■ It is clear that, in the case presently before us, we are concerned with whether the trial court erred as a matter of law. As delineated below, we conclude that the trial court erroneously relied on the maternal preference presumption as the basis for his award of custody of the minor child to the mother. Therefore, unless we were to determine that such error was harmless, we must under *Davis* remand the case for further proceedings in the trial court.

■ The determination of which parent is to have custody of a minor child rests within the discretion of a chancellor in equity. As this Court has stated numerous times, in exercising this authority the chancellor must be guided by what he believes would promote the child's best interests. *See, e.g., Kemp v. Kemp,* 287 Md. 165, 170, 411 A.2d 1028 (1980); *Stancill v. Stancill,* 286 Md. 530, 534, 408 A.2d 1030 (1979); *Ross v. Hoffman,* 280 Md. 172, 174–75, 372 A.2d 582 (1977); *Krebs v. Krebs,* 255 Md. 264, 266, 257 A.2d 428 (1969). Indeed, in custody disputes, resolution of the best interests of the child is of transcendent importance. *See, e.g., Nagle v. Hooks,* 296 Md. 123, 128, 460 A.2d 49 (1983); *Ross,* 280 Md. 175, 372 A.2d 582.

■ In custody disputes arising prior to the divorce, as in the instant case, the chancellor must adhere not only to the best interests of the child standard, but also to the language and purpose of Art. 72A, § 1. This provision was first enacted in 1929. At that time, the section stated in pertinent part:

"The father and mother are the joint natural guardians of their minor child and are equally charged with its care, nurture, welfare and education. They shall have equal powers and duties, and neither parent has any right

superior to the right of the other concerning the child's custody .... Where the parents live apart, the court may award the guardianship of the child to either of them." Acts of 1929, ch. 561, § 1.

Whereas the language, but not the import, of the first sentence in § 1 was amended by Acts of 1951, ch. 678, § 1, and Acts of 1973, ch. 651, § 33, the language of the second sentence has never been altered. Moreover, the intent of the General Assembly with respect to the equal right of both parents to custody of their minor child was reiterated by an amendment in 1974 to the third above-quoted sentence. *See* Acts of 1974, ch. 181, § 1. The section presently states:

"The father and mother are the joint natural guardians of their child under eighteen years of age and are jointly and severally charged with its support, care, nurture, welfare and education. They shall have equal powers and duties, and neither parent has any right superior to the right of the other concerning the child's custody.... Where the parents live apart, the court may award the guardianship of the child to either of them, *but, in any custody proceeding, neither parent shall be given preference solely because of his or her sex.*" (Emphasis added to illustrate language of amendment.)

Despite the clear and unambiguous language of Art. 72A, § 1 mandating equal treatment of parents with respect to determining who is to have custody, Maryland courts have consistently expressed a preference for awarding the custody of young children to the mother. This phenomenon is known as the "maternal preference" doctrine. The Court in *Oberlander v. Oberlander*, 256 Md. 672, 261 A.2d 727 (1970), delineated the principle as follows: "In determining what is the best interest of the child, it is entirely proper for the trial court to consider ... the general rule that the custody of a child of tender years should ordinarily be awarded to the mother." 256 Md. 676, 261 A.2d 727. To similar effect is the Court's statement in *Kauten v. Kauten*, 257 Md. 10, 11, 261 A.2d 759 (1970), that "it will be a

rare occurrence when a young child will be taken from its mother if she is a fit person and all other things are equal." Numerous other decisions of this Court have at least recognized, if not applied, this presumption. *See, e.g., Cornwell v. Cornwell*, 244 Md. 674, 678–79, 224 A.2d 870 (1966); *Palmer v. Palmer*, 238 Md. 327, 331, 207 A.2d 481 (1965); *Glick v. Glick*, 232 Md. 244, 248, 192 A.2d 791 (1963); *Alden v. Alden*, 226 Md. 622, 624, 174 A.2d 793 (1961); *Hild v. Hild*, 221 Md. 349, 357, 157 A.2d 442 (1960); *McCabe v. McCabe*, 218 Md. 378, 383, 146 A.2d 768 (1958); *Oliver v. Oliver*, 217 Md. 222, 228, 140 A.2d 908 (1958); *Casey v. Casey*, 210 Md. 464, 473–74, 124 A.2d 254 (1956); *Townsend v. Townsend*, 205 Md. 591, 596, 109 A.2d 765 (1954); *Trudeau v. Trudeau*, 204 Md. 214, 218, 103 A.2d 563 (1954).

This Court has not had occasion to consider the efficacy of the maternal preference doctrine since the General Assembly amended Art. 72A, § 1 in 1974. The Court of Special Appeals, however, in *McAndrew v. McAndrew*, 39 Md.App. 1, 382 A.2d 1081 (1978), determined that the effect of the 1974 amendment was to abolish the presumption. In *McAndrew*, the court noted that the legislation embodying the amendment was entitled "An Act concerning Custody of Children—No Preference to Either Spouse." 39 Md.App. at 8, 382 A.2d 1081. *See* Acts of 1974, ch. 181, § 1. The court then reasoned as follows:

"At the time this Act was passed, there was no preference of either spouse in a custody proceeding, based on sex, other than the maternal preference. It was, therefore, that maternal preference, being the only sex based preference then established in the law, that the General Assembly intended to abolish. Unless the 1974 amendment had that effect, it had none at all; and we will not presume that the Legislature intended to enact a meaningless statute in so important an area. Accordingly, we conclude that, since July 1, 1974, the maternal preference has been abolished by statute in child custody cases." 39 Md.App. at 8, 382 A.2d 1081 (footnote omitted).

After noting that a determination of the child's best interests requires an evaluation of biological and psychological differences between the parents, the needs of the particular child, and the relationship of each parent to the child, the court stated that the impact of its holding merely was as follows: "A parent is no longer presumed to be clothed with or to lack a particular attribute merely because that parent is male or female." 39 Md.App. at 9, 382 A.2d 1081. In conclusion, the court in *McAndrew* rejected the notion that the maternal preference doctrine should be used as a "tiebreaker" when the chancellor is confronted with two fit and proper parents. 39 Md.App. 9, 382 A.2d 1081.

We find the reasoning of the court in *McAndrew* persuasive. Further, in construing a statute, courts are bound to ascertain and promote the legislative intent. To discharge this duty a court must consider the legislative language given its natural and ordinary meaning. If there is no ambiguity in the language of a statute, then there generally is no need to look beyond that language to determine the legislative intent. *See, e.g., Hurst v. V & M of Virginia*, 293 Md. 575, 578, 446 A.2d 55 (1982); *Rome v. Lowenthal*, 290 Md. 33, 41, 428 A.2d 75 (1981); *Department of State Planning v. Hagerstown*, 288 Md. 9, 14–15, 415 A.2d 296 (1980); *Police Commissioner v. Dowling*, 281 Md. 412, 418–19, 379 A.2d 1007 (1977). The 1974 amendment to Art. 72A, § 1, by providing that "neither parent shall be given preference solely because of his or her sex," clearly states the intent of the General Assembly to eradicate sex as a factor in child custody proceedings. There is neither ambiguity nor obscurity with respect to the meaning of any words in this phrase. Therefore, we hold that the maternal preference doctrine is abolished in this State because it permits an award of custody to be made solely on the basis of the mother's sex.

It follows from the above analysis that, in awarding custody to Mrs. Elza, the chancellor below applied an invalid legal principle. A review of the record of the hearing

demonstrates that the chancellor believed each parent would be a proper and fit custodian. Nevertheless, he granted custody to Mrs. Elza because "it's a five year old ... all other factors being equal ... that in that case, the child should go with the mother." Indeed, the record establishes that this was the only reason expressed for awarding custody of Shannon to Mrs. Elza. Therefore, it is clear that the error in this case is not harmless and the case must be remanded for further proceedings in the trial court.

On remand, the chancellor shall explicate more fully the reasons for his decision. In evaluating what would be in the child's best interests, the chancellor shall consider, among other factors, Shannon's needs, the relationship of each of her parents to her, and the effect of the biological as well as psychological differences between her parents on her welfare. Given that additional information will undoubtedly be available to the chancellor when he again presides over this custody proceeding, we express no opinion concerning the ultimate resolution of this controversy.

ORDER AWARDING CUSTODY TO APPELLEE VACATED; REMAND FOR FURTHER PROCEEDINGS IN CONFORMANCE WITH THE VIEWS EXPRESSED HEREIN; COSTS TO BE PAID BY APPELLEE.