MATTHEW SPORRER, Administrator, *v.* M. CASSAN-
DRA ADY, Administratrix.

*Survivorship—Persons Dying in Same Accident—Evidence—*
*Review On Appeal—Chancellor's Finding Of Facts.*

Acts 1920, ch. 108, providing as to the presumption of sur-
vivorship, when persons entitled to inherit from one another
perish in the same calamity, without any showing as to who
died first, nor circumstances from which it can be inferred, ap-
plies only when there is no evidence as to which died first, and
no particular circumstances from which survivorship can be
inferred.                                                  p. 64

On an issue as to the right to the proceeds of an insurance
policy on the life of one who, with his wife, was killed in an
automobile accident, *held* that the finding of the chancellor, on
conflicting evidence, that the wife survived the husband, would
not be disturbed.                                       pp. 64-70

The finding of the chancellor on a question of fact, based
on testimony taken in open court, will not be disturbed unless
clearly erroneous.                                         p. 70

*Decided February 10th, 1926.*

Appeal from the Circuit Court of Baltimore City (STEIN,
J.).

Interpleader proceeding by the Phoenix Mutual Life In-
surance Company, in which Matthew Sporrer, administrator
of Frederick M. Sporrer, deceased, was, by order of court,
made plaintiff, and M. Cassandra Ady, administratrix of
Lyda Ady Sporrer, deceased, was made defendant. From
a decree for defendant, plaintiff appeals. Affirmed.

The cause was argued before BOND, C. J., URNER, AD-
KINS, OFFUTT, DIGGES, and WALSH, JJ.

*Benjamin L. Freeny,* for the appellant.

*Edward J. Colgan, Jr.,* with whom was *James J. Lindsay, Jr.,* on the brief, for the appellee.

DIGGES, J., delivered the opinion of the Court.

The single question to be decided upon this appeal is, Did Lyda Ady Sporrer survive her husband, Frederick M. Sporrer? If she did, the decree appealed from should be affirmed; if she did not, it should be reversed. The situation which makes a decision of this question necessary was produced by the following proven and conceded facts: That in the year 1922 the Phoenix Mutual Life Insurance Company issued a policy upon the life of Frederick M. Sporrer in the sum of ten thousand dollars, which policy was in full force at the time of the death of Frederick M. Sporrer; that by the terms of the policy Lyda Ady Sporrer, the wife of the insured, was made the beneficiary, provided she survived the said Frederick M. Sporrer, and it was stipulated in said policy that if she did not survive her said husband the proceeds of the policy should be payable to the estate of the said Frederick M. Sporrer; that on November 25, 1923, at about 7:00 o'clock P. M., Frederick M. Sporrer and Lyda Ady Sporrer were thrown from an automobile in which they, together with their six-year-old son, Mrs. Sporrer's sister, M. Cassandra Ady, her brother, Benjamin W. Ady, his wife, and infant child were riding; that from injuries sustained at the time of this accident both Mr. and Mrs. Sporrer died; that after the accident Mrs. Sporrer was placed in a Ford automobile and taken to the Johns Hopkins Hospital, while her husband was taken to St. Joseph's Hospital in a Chevrolet; that according to the hospital records, both Mr. and Mrs. Sporrer reached the respective hospitals at the same time, 7:30 P. M., and that both were found dead upon arrival; that the accident happened after dark at about 7:00 P. M., at a point on the Harford Road near the village of Carney, from one-quarter to one-half mile from the Joppa Road. That St. Joseph's Hospital is from seven to nine

city blocks nearer to the scene of the accident than Johns Hopkins Hospital.

The appellant, Matthew Sporrer, duly qualified as administrator of his deceased son, Frederick M. Sporrer, and the appellee, M. Cassandra Ady, qualified as administratrix of her deceased sister, Lyda Ady Sporrer. The appellant and appellee each claiming the proceeds of the insurance policy, the insurance company filed in the Circuit Court of Baltimore City its bill of interpleader; whereupon the court passed a decree requiring the parties to interplead, and ordered that Matthew Sporrer, administrator, should be plaintiff, and M. Cassandra Ady, administratrix, should be defendant. After taking testimony in open court, and argument, the learned chancellor, by decree dated March 5th, 1925, adjudged and ordered that M. Cassandra Ady, administratrix of Lyda A. Sporrer, is entitled to receive the proceeds of the policy of insurance. From that decree this appeal is prosecuted.

Chapter 108 of the Acts of 1920, now codified as section 71 of article 35 of the Code, provides: "If several persons respectively entitled to inherit from one another should, after the passage of this act, perish in the same calamity, such as a wreck, collision, battle, conflagration, flood, earthquake, storm or accident, and it is not shown who died first, and there are no particular circumstances from which it can be inferred, survivorship shall be presumed from the probabilities resulting from the strength, age and difference of the sexes, according to the following rules: * * *

"E. If those who have perished together were above the age of fifteen years, and under the age of sixty years, and the sexes be different, the male shall be presumed to have survived."

The husband and wife, who perished as a result of the same accident, were both between the ages of fifteen and sixty years, Mr. Sporrer being forty-three and his wife thirty-six years of age. Does the statute above quoted apply to a case of this character? We think not. Prior to the

enactment of this legislation there was no presumption of survivorship and it was incumbent upon the party alleging to establish it. *Cowman v. Rogers,* 73 Md. 405. In that case there was no means of determining which of the parties survived, and no circumstances from which it could be inferred. The case grew out of the death of husband and wife as a result of the Johnstown flood, and the only fact proven relative to the issue of survivorship was that, when the flood waters submerged and destroyed their home, the husband and wife were together in the living room on the first floor of the house, and were never again seen. It is apparent that any decision as to which one survived the other could be based only upon speculation and conjecture.

The case of *McComas v. Wiley,* 134 Md. 572, decided June 24th, 1919, before the passage of the act, arose by reason of the accidental death of Mr. and Mrs. Charles L. Wiley. An automobile in which they and other persons were riding was struck by an express train, causing injuries to Mr. and Mrs. Wiley, from which they both died, either instantaneously or in a very short time. There were a number of witnesses who testified that Mrs. Wiley was alive for as long as fifteen minutes after the accident, while others, including expert medical witnesses, testified that her death was instantaneous. As in *Cowman v. Rogers, supra,* this Court, speaking through Judge Urner, held: "In such a situation it is necessary that a claim which is dependent upon the occurrence of the deaths in a particular order shall be supported by satisfactory proof of the sequence of events thus relied upon, and in the absence of such evidence there is no certain basis upon which the asserted right can be sustained." From the evidence, although conflicting, this Court found the fact that Mrs. Wiley survived her husband.

The Act of 1920 was passed shortly after this decision. The question therefore is, Does the statute apply to cases where there is positive testimony, though opposite and conflicting, or is it only applicable in that class of cases where

there is a total absence of testimony as to the fact of which one died first? The presumptions expressed in the statute do not arise, as seen by its language, unless "it is not shown who died first and there are no particular circumstances from which it can be inferred."

The present case presents an issue as to a single fact, to wit: Did Mrs. Sporrer outlive her husband? More than twenty-five witnesses were sworn and gave admissible and pertinent testimony in support of the contentions of the plaintiff or the defendant on the issue. It cast upon the learned judge the duty of determining the fact from the evidence, and in no way differs from all cases where the existence of a fact is disputed, and the evidence thereof is conflicting and contradictory. We are of the opinion that section 71 of article 35 is limited in its application to that class of cases in which there is no evidence as to who died first, and no particular circumstances from which survivorship could be inferred, of which class *Cowman v. Rogers* is an illustration, and does not apply to the present case.

A careful study of the record establishes certain facts, clearly and beyond dispute, viz., that about seven minutes after the accident Mrs. Sporrer was placed in a Ford touring car and sent to Johns Hopkins Hospital; that she was alive at the time she was placed in the car; that when the Ford car reached the Joppa Road, from one-fourth to one-half mile from the scene of the accident, Mrs. Sporrer was seen leaning sidewise out of the car by the appellant's witness, Clarence E. Everett, who was riding on the running board of the car; that witness pushed her back in the car, and as he did so she seemed to take a long breath, and fell back across the seat, and was not seen to move again; that it sounded to witness "as if there was a weight came on top of her and forced the breath out of her body"; that at that time witness called to the driver of the car and said, "This lady in back here is gone"; that Mrs. Sporrer was dead when

she arrived at the hospital, which was at 7:30 P. M., according to the hospital records.

From the above it is positive that Mrs. Sporrer died between the time she was put in the Ford car and the time the car reached the hospital; and the great probability is that she died at the time when the car reached Joppa Road, as described by the witness Everett. The evidence further discloses that the husband, Frederick M. Sporrer, was not removed from the scene of the accident until some time after his wife, the time varying, according to the appellant's witnesses, from ten to thirty minutes, and according to the appellee's witnesses, from three to six minutes. The longest time testified by any of the witnesses between the time Mrs. Sporrer was taken away and the time her husband was taken away, was thirty minutes; and while this does not seem probable when all of the evidence on this point is considered, it is, nevertheless, reasonably certain that this interval was at least five minutes, as no witness testifies positively that it was less than five minutes, and the probability is that it was from ten to fifteen minutes. There was no evidence of any witness actually timing this interval; and if we assume, as we must, that all of the witnesses on this point were endeavoring to tell the truth according to their best judgment, then the average judgment of all the witnesses who testified on the point is that the interval was fourteen minutes. The records of Johns Hopkins and St. Joseph's Hospitals show that the bodies of Mr. and Mrs. Sporrer reached these hospitals at the same time, 7:30 P. M.; and while these records may not be accurate as to the time, there is no testimony in the record which proves their incorrectness; and even if their bodies did arrive at the hospitals a few minutes before or after 7:30, there is no evidence to show, and we are not justified in concluding, that they did not arrive at the same time. This being true, it is certain that the difference in time at which the two cars left the scene of the accident was sufficient to enable the

car in which Mrs. Sporrer was, to travel from seven to nine city blocks farther, and yet arrive at the hospital at the same time as the other car. If Mrs. Sporrer died in the Ford car at the time it reached Joppa Road, which is not more than half a mile from the scene of the accident, then it is certain that she died before her husband was removed from the scene of the accident; and this brings us to the question of whether or not Mr. Sporrer was dead at the time he was put in the Chevrolet machine.

The evidence by the various witnesses in respect to Mr. Sporrer's condition at the time they arrived and while they were present at the scene of the accident, up to the time he was put in the car, is as follows:

John L. Dietz (for the appellant) testified: "Q. What was Mr. Sporrer's condition, was he still living? A. He was breathing yet when we put him in the machine. (The Court): Was he conscious? (The Witness): No, unconscious; he was breathing yet fairly good when we put him in the machine. Q. And that is as far as you know? A. Yes."

Clarence E. Everett (for the appellant) testified: "Q. Had you seen Mr. Sporrer—do you know whether or not he was dead at that time? A. No, sir; he was not dead. I kneeled down alongside of him and—at first I thought it was a young boy, Mr. Sporrer—I did not know it was a man, I thought it was a young fellow, and I kneeled down alongside of him to see how he was. * * * Q. You say Mr. Sporrer was not dead at that time? A. No, sir; he was not dead."

Harry E. Dietz (for the appellant), who drove Mrs. Sporrer to the hospital and whose testimony could only relate to what took place before he left, testified: "(The Court): When you got there (referring to the scene of the accident) what did you see? (The Witness): I saw these people lying around. (The Court): Who were they? (The Witness): I did not know them. (The Court): Were they men, women or children? (The Witness): Two ladies and a man and little child, boy. The lady and Mr. Sporrer were

laying on the upper side of the car, and the boy and the other lady were laying on the lower side toward the city limits. ** * * Q. You say that you saw Mr. Fred Sporrer laying on the road? A. Yes. Q. Was he alive at the time you saw him? A. He seemed to be alive. (The Court): What was he doing? (The Witness): Laying down on his face. (The Court): How close were you to him? A. Standing right opposite him. (The Court): What did you see him do? (The Witness): You could hear him breathe and see his body move as he breathed. (The Court): Hear any sounds? (The Witness): No, sir."

Edward H. Ellinger (for the appellant), who arrived some time after the accident, testified: "Q. Were you there when Mr. Sporrer was taken away? A. Yes, sir. Q. How long after young Mr. Dietz had left with Mrs. Sporrer before Mr. Sporrer was taken away? A. About 25 or 30 minutes. Q. Did you see Mr. Sporrer? Whose machine was he put in, do you know? A. I could not tell you. Q. Do you know whether he was living or dead when he was put in this machine? A. Well, he was not dead; no, sir."

George R. Hamann (for the appellee), testified that he was walking down the road with Mr. Edward Chenoweth when a machine passed them, and in a few seconds he heard the crash, and remarked to Chenoweth that there was an accident; that they were about one hundred feet from where the accident happened when he heard the crash, and when he got there he found Mrs. Sporrer lying out "like this here (indicating) near about the center of the road, at the rear end of the machine, and the little boy was laying next, the same as she was, and Mr. Sporrer was laying right the way the machine was sitting. The machine was sitting head in towards the telegraph pole, and I went around and examined them, and I seen Mrs. Sporrer was living, and the boy was living, and Mr. Sporrer, I am almost positive, was dead, because I got them ready to send them to the hospital, and I got this machine, this man Dietz—I did not know him then, I don't know him now, hardly, but at first I asked

him if he would take them to the hospital, and said, Yes, and I got Mrs. Sporrer and the boy and then I found Mrs. Ady down below the machine. * * * Q. What did you find with reference to Mr. Sporrer? A. He was very quiet and I examined him—I felt his pulse and felt his heart and I did not find any life in him. I said, 'Let him go, and get the others to the hospital. Q. What was your reason for doing that? A. I thought he was dead and best to get the ones that were hurt to the hospital. (The Court): Did you look around to see whether or not he was breathing? (The Witness): Yes. (The Court): What did you find? (The Witness): He was not breathing. * * * Q. When you and Mr. Chenowith got there had any one else arrived yet? A. Not that I could see —I seen no one but Mr. Ady. He had just come around the car and hollered, My God, some one help me to get them to the hospital. Q. You say you and Mr. Chenoweth were about one hundred feet away from the accident when it happened? A. Yes, might have been a little more or less. * * * Q. What have you worked at the greater part of your life? A. I was with the United Railways twenty-seven years and lineman on the trouble wagon for seventeen years, and I have had right smart of cases something similar to that and that is what made me right quiet in handling it."

Edgar G. Chenoweth (for the appellee), who was with Hamann, testified that he was about one hundred and twenty-five feet away when he heard the crash, and ran to the accident with Mr. Hamann; that there was no one there at that time except those who had been in the car; that when he got to the wreck there were the child, the lady and gentleman, lying in the ditch; that he picked the child up and laid it on the side of the road, pulled the lady up and moved the gentleman, straightened him around and turned him over; they were face down and he turned them on their backs; as soon as the machine came along he picked the child up and put him in the machine, and then picked Mrs.

Sporrer up and put her in the machine, and that machine left for the hospital. "Q. Did you turn the body of Mr. Sporrer over in the road? A. I did. Q. At about the same time you went to her? A. Yes, I went to the child first. Q. And then Mrs. Sporrer and then Mr. Sporrer? A. Yes, that is the way I found them laying. Q. When you went to Mr. Sporrer and turned him over in the road, what was his condition at that time? A. No life whatever, no sign of life, made no struggle. Q. Did you help to put Mr. Sporrer in the machine that took him away? A. I did. * * * Q. Before you put Mr. Sporrer in the automobile did you do anything or make any examination to satisfy yourself whether he was alive or dead? A. I asked the question whether the man was dead or alive, and Mr. Hamann felt his pulse, and I put my right hand over the man's heart. Q. Were you able to discover any signs of life? A. I was not. (The Court): That was when? (The Witness): Right before I picked him up, after the other car had come along and took him away."

Benjamin W. Ady (for the appellee), the driver of the wrecked car, testified: "Q. Did you help to put Mr. Sporrer in the machine that carried him away? A. Yes. Q. What was his condition then as observed by you, did he appear to be living or dead? A. He was limp when we put him in the machine. (The Court): Was he breathing? (The Witness): I did not see him breathe any; no, sir. (The Court): Did you hear him? (The Witness): No, sir. (The Court): Was he making any sound? (The Witness): No, sir. * * * Q. Did you go all the way to St. Joseph's Hospital? A. Yes. Q. Were you there when he was carried in? A. Yes, helped to carry him in. Q. Did you notice any signs of life in Mr. Sporrer from the time you left the scene of the accident until he was put on the table at St. Joseph's? A. No, sir."

It will be seen from this testimony that the witnesses for the appellant all testified that Mr. Sporrer was alive after the accident, but only John L. Dietz and Ellinger testi-

fied that he was alive when he was put in the car to be taken away, for the reason that the younger Dietz and Everett had previously left in the car with Mrs. Sporrer; and Ellinger's testimony is not that he helped to put Mr. Sporrer in the car, but that he saw him put in the car, and in reply to the question, whether he was living or dead, at that time, said, "Well, he was not dead; no, sir." It further appears that the witnesses who actually assisted in putting Mr. Sporrer in the car were John L. Dietz, who testified that he was alive at that time, and Edgar G. Chenoweth and Benjamin W. Ady, who testified that he was dead at that time. The witness Hamann testified that he did not help to put Mr. Sporrer in the car, but that he had made an examination of his body by feeling his pulse and heart, and thereby determined that Mr. Sporrer was dead before he was put in the car. The testimony of this witness impresses us, for the reason that he appears not to have been excited, and that his occupation for seventeen years prior to the time of this accident had been such as to make him familiar with accidents of this kind, and such as likely to enable him to judge accurately as to whether on this occasion Mr. Sporrer was alive at the time he made the examination.

From the testimony as disclosed by the record the chancellor found that Mrs. Sporrer survived her husband, and we are unable to say that this finding was error, and are unwilling to disturb his decree. We have found occasion, in numerous decisions, to enunciate the rule that this Court is loath to reverse the lower court upon a finding of fact unless the evidence clearly demonstrates that such finding was erroneous, for the sufficient reason, often stated, that the chancellor has the benefit of seeing and hearing the witnesses, observing their manner of testifying and general demeanor; or, in other words, having the benefit of the atmosphere surrounding the trial. In the present case, the testimony having been taken in open court, the chancellor had the benefit of this atmosphere, which we are denied; and when, on the evidence as disclosed by the record, the

question is as close and uncertain as here presented, we will not disturb the lower court's decision.

In addition to what we have just said, in this case there seems to be no practical reason for the difference of contentions between the parties, because the little boy, the son of Mr. and Mrs. Sporrer, survived the accident and is entitled to the fund, without regard to whether his father or mother died first. It could be argued that the practical question of material interest to the parties is the commissions growing out of the administration; but this, too, becomes immaterial, because this Court was informed in argument by counsel for both sides that neither of the parties to this appeal would charge commissions if they were successful. In view of this situation, this appeal, in so far as it affects property rights, amounts to a moot question. For the reasons stated, the decree of the lower court will be affirmed.

*Decree affirmed, with costs to the appellee.*