## ORNDOFF *v.* ORNDOFF

[No. 133, September Term, 1968.]

520

*Decided March 4, 1969.*

The cause was argued before HAMMOND, C. J., and MAR-BURY, McWILLIAMS, FINAN and SINGLEY, JJ.

*John C. Sullivan* for appellant.

*Thomas N. Berry* for appellee.

MARBURY, J., delivered the opinion of the Court.

On May 10, 1968, the Circuit Court for Allegany County dismissed the appellant Richard Clyde Orndoff's petition for change of custody of his minor son, which had been awarded to his former wife under a decree *a vinculo matrimonii* dated January 31, 1968. From the order dismissing the petition the father has appealed.

The appellant and the appellee-mother Sandra Lee Orndoff were married on August 30, 1965. Their son Shawn Richard Orndoff, whose custody is the subject of this appeal, was born on September 3, 1966. The mother obtained a divorce *a mensa et thoro* from the appellant on July 5, 1967, and was granted custody of Shawn. On January 31, 1968, the appellant received a decree awarding him a divorce *a vinculo matrimonii* from appellee on the ground of adultery. In that decree the court awarded custody of the child to the mother with the right of reasonable visitation to the father. No appeal was taken from

that decree, but on February 19, 1968, appellant filed a petition alleging that additional evidence had been obtained since the last divorce hearing to show the unfitness of the mother to have custody of the child. After testimony was presented at a hearing the court was of the opinion that the best interest and welfare of the child would be served by continuing custody in the mother, and dismissed appellant's petition. On appeal from that action the single issue presented is whether the lower court erred in refusing to change custody.

Much of the testimony offered on appellant's behalf was given by his mother, Mrs. Clyde Orndoff, and by a part-time detective George Thomas. The appellant also testified, as did two baby sitters, Ramona Washington and Linda Bullett. The appellee was not represented by counsel at the hearing and her evidence consisted solely of her testimony.

Briefly, the appellant attempted to show that the appellee had continued an illicit relationship with one Gary Barncord, who had been named as the paramour when appellant obtained his divorce on the ground of adultery. Appellant, his mother, and Thomas testified to the appellee's activity on January 27 and 28, 1968. All three observed the appellee, Barncord and another couple in the State Line Inn. Thomas testified that he, Mrs. Clyde Orndoff and appellant observed Barncord and the appellee enter her home about 4:00 a.m. and that the lights went out a few minutes later. Shortly thereafter both appellant and his mother left, but Thomas testified that he remained there until eight o'clock in the morning. When asked if he knew whether Barncord came out during the time that he was there, Thomas responded "No, sir." Thomas also testified concerning appellee's activities on several other occasions. On inquiry from the court Thomas admitted that he had not been retained in his capacity as a detective, but that his services were rendered out of friendship.

The testimony of appellant's mother and Thomas regarding whether Barncord stayed at the appellee's home upon returning from an evening out on January 28 was contradicted by the baby sitters, Ramona Washington and Linda Bullett, both of whom were witnesses for the appellant. These two girls stated that on the evening in question that the appellee did not return

with Barncord but came back alone. On her own behalf the appellee denied that Barncord had ever stayed at her home overnight at any time. Further, she testified that the appellant had not seen his son for eight months although he had been awarded rights of reasonable visitation.

The lower court concluded that the evidence of Barncord staying overnight was conflicting and unpersuasive. The two baby sitters, who were appellant's own witnesses, contradicted the testimony of appellant's mother and the detective, and corroborated that of the appellee who denied the charges of impropriety. The lower court had the opportunity to hear and observe the parties and the appellant's witnesses, and this Court cannot say that his decision was clearly erroneous. Maryland Rule 886 a. See *Daubert v. Daubert,* 239 Md. 303, 211 A. 2d 323; *Sibley v. Sibley,* 187 Md. 358, 50 A. 2d 128.

The trial court found that the appellee was not unfit to have custody of her child and that the record was devoid of any evidence of neglect, abuse, or lack of love for her child. Although the appellee was employed at the time of the hearing, the court concluded that she provided adequate supervision for the boy during her absence. The court further found that it believed that appellant's petition was motivated by a desire to punish the mother for her transgressions rather than out of love for the child.

The best interest of a child is the determinative factor in custody cases. *Shanbarker v. Dalton,* 251 Md. 252, 247 A. 2d 278; *Breault v. Breault,* 250 Md. 173, 242 A. 2d 116; *Heaver v. Bradley,* 244 Md. 233, 223 A. 2d 568. There is no absolute rule that one who has committed adultery is *ipso facto* an unfit person and in several cases custody has been awarded to an adulterous parent. *E.g., Pratt v. Pratt,* 245 Md. 716, 228 A. 2d 611; *Miller v. Miller,* 245 Md. 711, 228 A. 2d 311; *Cornwell v. Cornwell,* 244 Md. 674, 224 A. 2d 870; *Oliver v. Oliver,* 217 Md. 222, 140 A. 2d 908. Even if the appellant had established illicit conduct on the appellee's part, we cannot say under the circumstances presented in this case that the lower court erred in dismissing appellant's petition.

> *Order affirmed. Costs to be paid by appellant.*