## NEUWILLER *v.* NEUWILLER

[No. 253, September Term, 1969.]

*Decided March 9, 1970.*

The cause was argued before HAMMOND, C. J., and BARNES, FINAN, SINGLEY and DIGGES, JJ.

*Sidney Blum* for appellant.

No brief filed on behalf of appellee.

FINAN, J., delivered the opinion of the Court. BARNES, J., dissents. Dissenting opinion at page 287 *infra.*

This case is before us on appeal from a decision of the Circuit Court for Baltimore County which granted custody of a couple's two year old son to the mother, the appellee. The parties to this dispute, Thomas and Bonnie Neuwiller, were married March 29, 1965. In July of 1968, the parties were no longer living with each other. The husband in September, 1968, instituted a divorce proceeding alleging the adultery of his wife. On June 30, 1969, Judge Maguire granted the appellant a divorce *a*

286

*vinculo matrimonii* and awarded custody to the mother. This appeal is from the custody decision.

The testimony at the hearing revealed that the mother of the child was twenty-seven and the father forty-one. Each had steady employment and was able to provide for the needs of the child. The appellee left the child with her 68 year old mother during the day while she was at work. The father introduced a neighbor who testified that she would be willing to take care of the child during the day if the father was awarded custody.

The trial court found that following her separation from her husband in July, 1968, the appellee did engage in adulterous conduct. There was also sufficient evidence to indicate that she had performed an abortion.

In granting custody to the mother, Judge Maguire made it clear that he was not overwhelmed with the character of the wife. However he felt that her adulterous conduct was not determinative of the central issue which in any custody case is who will further the best interests of the child. Recent Maryland cases clearly support this position. See *Kauten v. Kauten,* 257 Md. 10, 261 A. 2d 759 (1970) ; *Orndoff v. Orndoff,* 252 Md. 519, 250 A. 2d 627 (1968) ; and *Cornwell v. Cornwell,* 244 Md. 674, 224 A. 2d 870 (1966). Although the evidence is not as clear as the Court should like to see it that the mother had definitely ceased her relationship with the paramour, yet, Judge Maguire did note that she had not associated with him for the past few months. We might add that custody awards are never final. If at any time there is sufficient evidence to indicate that the mother's behavior is having an adverse effect on the child, the court should not hesitate to change custody. In this case, we are satisfied that the lower court was duly impressed by the fact that the child was only two years old. The court affirmatively noted that there was no evidence to indicate that the mother had not properly cared for the child. These factors obviously convinced the chancellor that there was not sufficient evidence to rebut the normal presumption that a young child should not be taken from

its mother. *Kauten, supra,* and *Breault v. Breault,* 250. Md. 173, 180, 242 A. 2d 116 (1968).

In the present posture of the case we cannot find that the chancellor abused his discretion especially since he had the parties and witnesses before him. *Orndoff, supra; Daubert v. Daubert,* 239 Md. 303, 211 A. 2d 323 (1965) ; and *Sibley v. Sibley,* 187 Md. 358, 50 A. 2d 128 (1946).

*Decree affirmed, appellant to*
*pay costs.*

BARNES, J., dissenting.

I dissent because it appears to me that the majority *holds* for the first time that custody of an infant may be awarded to an adulterous mother without any finding by the trial court that the mother had repented of her unlawful conduct, had discontinued it and that there was a strong probability that she would not engage in that conduct in the future.

As the majority points out, "Judge Maguire made it clear that he was not overwhelmed with the character of the wife"; and indeed the record clearly indicates to me that there was no reason he should have been. The evidence shows that the mother deliberately provoked quarrels with her husband to precipitate a separation so that she could more easily be with her paramour, who is separated but not divorced from his wife. This tactic succeeded and as the lower court aptly put it, "It is overwhelming in the opinion of the Court that the wife is guilty of adultery. Overwhelming." When the wife became pregnant, she admitted that she had performed an abortion on herself. She required hospitalization as a result of the after effects of this illegal act. Still later on January 28, 1969, she believed that she was pregnant again (obviously by the paramour as she admitted that she had not had intercourse with her husband since July or August 1968 and had had an abortion in the meantime) and had a urine test made at the hospital under an assumed name so that her husband would not learn of the episode. There was evidence that the mother had

not seen her paramour for about two months prior to the hearing in this case, but there was no evidence indicating that she was sorry for her past conduct and had resolved to see her paramour no more. When the mother was asked the question, "You feel that it is right for a woman that is married to one man to go out with a man that is married to another woman?" she answered, "Yes." In short, there is no finding by the lower court that the adulterous mother has repented of her adulterous life, stopped her unlawful conduct and that it is probable that she will live an exemplary life in the future. The evidence suggests the contrary.

I am well aware that our·recent decisions have departed from the rigor of prior cases in this Court in denying custody to an adulterous mother. In my opinion, we have relaxed the general rule denying such custody too much. See my dissenting opinion in *Cornwell v. Cornwell,* 244 Md. 674, 680, 224 A. 2d 870, 874 (1966). At least in *Cornwell,* however, the lower court found (erroneously in my opinion) that the adulterous mother had repented of her adulterous conduct, had regularized her domestic life by marrying her latest paramour and had established a stable home where the children would be well cared for and happy. In my opinion, such a finding by the lower court, with sufficient evidence to support it, is a necessary one to enable the adulterous mother to make a "strong showing" to rebut the presumption that she is not a fit person to have custody of her children. See *Mason v. Mason,* 228 Md. 387, 389, 179 A. 2d 897, 898 (1962). As I review the prior decisions of this Court, we have *held* that such a finding is a necessary one. In *Orndoff v. Orndoff,* 252 Md. 519, 250 A. 2d 627 (1969), in which I did not sit, this Court, in *holding* that the trial court was not clearly erroneous in refusing to change the custody awarded to the mother because of her alleged adulterous conduct subsequent to the filing of the decree awarding custody to her, pointed out in its opinion that the evidence in regard to the subsequent adultery was "conflicting and unpersuasive" and that the lower court

was not clearly erroneous when it found that the alleged misconduct had not been established. There is a *dictum* at the end of the opinion in *Orndoff* that: "Even if the appellant had established illicit conduct on the appellant's part, we cannot say under the circumstances presented in this case that the lower court erred in dismissing appellant's petition." In my opinion we should not apply this *dictum* in future cases, because it is unsound and was by its terms confined to the particular facts in the *Orndoff* case.

In *Kauten v. Kauten*, 257 Md. 10, 261 A. 2d 759 (1970), we clearly indicated that the adulterous mother had repented of her misconduct, had experienced a religious conversion and was leading an exemplary and upright life at the time of the custody hearing.

I am mindful that there is a presumption that a young child should not be taken from its mother. In my opinion, however, this presumption does not in and of itself overcome the requirement of a "clear showing" that an adulterous mother is a fit person to have custody of her children, although it is, of course, one of the factors to be considered by the lower court in reaching its decision on the question of the custody.

We and the lower courts should keep in mind that a mother who commits adultery and who persists in a continuation of an adulterous life demonstrates that she is so deficient in the proper traits of character, self-discipline, true regard for her children and the maintenance of a proper family relationship, that she is indeed unfit to have the custody of her children entrusted to her by the Court. This is especially so where there is no showing that the innocent father is not a fit person to properly raise and care for his children. The continued presence of the paramour or paramours in the home of the children cannot fail to have an injurious and blighting effect upon the morals and sense of security of the children. Then too, the adulterous mother will seek to justify her conduct to her children, degrade and belittle the father of the children and alienate them from him. I can-

not believe that this type of "home" is for the welfare and best interest of the child, which as the majority properly observes is the ultimate test to be applied. We have recently sustained an order of a lower court continuing the custody of the four infant children in the father after a divorce decree granting the father a divorce a *vinculo matrimonii* on the ground of the mother's adultery. See *Hardisty v. Salerno,* 255 Md. 436, 258 A. 2d 209 (1969). In view of the fact that the well established rule that we will not disturb the findings of fact of the lower court unless clearly erroneous is of great and vital importance in custody cases—and most of our decisions may be reconsidered upon the application of this principle—the solution to the problem, as I see it, may well be a firmer application of the rule by the trial courts that the adulterous mother must make a "strong showing" that she is indeed a fit person to have custody of her children.

There was no finding and no evidence in the present case that the father is not a fit person to have custody of his child who, from the evidence, loves his father. The mother does not actually contend to the contrary—her criticism of the father being that from her viewpoint, he is too concerned about, and too protective of, his son. The home he would provide for his son appears, from the evidence, to be quite adequate and equal to, if not superior to, the care which the mother can supply with her arthritic 68 year old mother and her mother's 74 year old husband.

For these reasons, I would reverse the order of the lower court or, at the very least, remand the case without affirmance or reversal under Maryland Rule 871. The second alternative would allow the lower court to take additional testimony to ascertain whether or not the adulterous mother had repented of her adulterous conduct, as well as of performing abortions upon herself, and would most likely in the future live an upright and proper life in which the infant child would have a good moral environment and proper home life. Cf. *Krebs v. Krebs,* 255 Md. 264, 257 A. 2d 428 (1969).

It is correct, as stated at the end of the majority opinion, that "custody awards are never final" and that if there is a showing in the future "to indicate that the mother's behavior is having an adverse effect on the child, the court should not hesitate to change custody." My point is, however, that the adulterous mother had not made a "clear showing" rebutting the presumption that she is an unfit person to have custody at the time the custody order was passed by the lower court.