## PONTORNO *v.* PONTORNO

[No. 318, September Term, 1969.]

*Decided April 7, 1970.*

The cause was argued before HAMMOND, C. J., and BARNES, FINAN, SINGLEY and DIGGES, JJ.

*Charles W. Bell*, with whom were *John T. Bell* and *Bell & Bell* on the brief, for appellant.

*Sebert H. Keiffer*, with whom were *Vallario & Keiffer* on the brief, for appellee.

FINAN, J., delivered the opinion of the Court.

This case is before us on appeal from a decision of the Circuit Court for Prince George's County which granted the appellee, Gervasio Pontorno, an *a vinculo matrimonii*

divorce from appellant, Nancy Pontorno, and the custody of their two children. The parties were married in 1965. They separated for a period of one week in 1967 after the husband found his wife together with a Mr. Green in a parking lot late one night. The couple managed to reconcile their differences and resided together until April, 1968. At this time they separated pursuant to a written separation agreement.

Following the separation, the husband became suspicious of the wife's continuous relationship with Mr. Green. He hired two detectives to investigate. Their report apparently substantiated Mr. Pontorno's suspicions, for in April of 1969 he filed a bill of complaint seeking a divorce on the grounds of his wife's adultery. After a hearing, Judge Mathias granted the divorce on the grounds of her adultery and granted custody of the two children to the father. From both of these decisions, the wife appeals.

Appellant contends that the evidence of her adultery is only circumstantial and more specifically that the testimony failed to establish an adulterous disposition on her part. Unfortunately for appellant, the testimony reveals not only the existence of such a disposition but the presence of numerous opportunities for its exercise. The testimony of a neighbor of Mrs. Pontorno revealed that she was under the impression that Mr. Green was the appellant's husband because she would see him enter appellant's apartment at night and observe him leave in the morning wearing a change of clothing. The two detectives testified that they saw the two together in the wife's apartment, that the lights went out and that by the time their surveillance ended, which was 3:00 A.M., he had still not left the apartment. Judge Mathias found that "we have Mr. Green continuously in this picture. We have him before the separation, during the separation, and even after she was served with the papers alleging adultery."

Over twenty years ago our predecessors in *Dougherty*

*v. Dougherty,* 187 Md. 21, 27, 28, 48 A. 2d 451 (1946) stated:

> "* * * To prove adultery, the circumstantial evidence must establish (1) a disposition on the part of the defendant and the paramour to commit adultery, and (2) an opportunity to commit the offense * * *."

We have had occasion to repeat the same proposition of law all too frequently. *Patzschke v. Patzschke,* 249 Md. 53, 59, 238 A. 2d 119 (1968); *Matakieff v. Matakieff,* 246 Md. 23, 31, 226 A. 2d 887 (1967); *Abare v. Abare,* 221 Md. 445, 450, 157 A. 2d 427 (1960), to cite but a few. The evidence in the present case was very similar to that in *Abare.*

> "* * * The evidence was that on the first of these occasions Mr. Abare picked up Mary Ann at her apartment in Washington during the afternoon, that they were seen to enter Mr. Abare's house at about 6:10 P.M., that at 9:30 the lights went out, that at 10:30 a light came on for a short time in the bathroom and that up to midnight the co-respondent had not left the house. The evidence as to her visit on March 28 was, in general, similar, except that the watch was continued until 4 A.M. on March 29th, without the co-respondent having been seen to leave the house." *Id.* at 449.

The Court in *Abare,* believed that such evidence was sufficient to afford the opportunity for the commissions of the offense, noting, "the repeated visits of the co-respondent to the husband's home show abundant opportunity * * *." *Id.* at 451.

We are also aware that this Court has frequently stated that evidence of an adulterous disposition should be established by conduct of the guilty party and the paramour which consists of some public display of intimacy or indifference to propriety that is observed by others.

*Patzschke, supra,* at 60; *Hockman v. Hockman,* 187 Md. 340, 347, 50 A. 2d 136 (1946). However, in *Abare* this Court stated that "\* \* \* [W]e think circumstances of these visits are sufficient to warrant an inference of a disposition to commit adultery. These evening visits were fairly numerous, no one else was present, \* \* \* the visits lasted far into the night." *Id.* at 451.

In the instant case, the visit by Green to the wife's home, which was observed by the private detectives, lasted until the early hours of the morning. Indeed, there was evidence from which one could reasonably conclude that his visits had on occasion lasted the entire night. The total effect of the evidence is to present on the part of the wife and the paramour a callous indifference as to what the neighbors may have thought of their relationship or what justifiable conclusions they may have drawn as to the morality of their conduct by virtue of Green's round the clock arrivals and departures at the wife's apartment. We think such bland disregard for public impression about a matter which gives rise to a presumption that an illicit relationship persists is such conduct as would support an adulterous disposition. *Abare, supra,* at 451, 452, and *Dougherty, supra,* at 187.

The second issue concerns the custody of the two young girls. One is 3 years old, the other eighteen months. The thrust of appellant's contention is that the Chancellor awarded custody to the father solely because of the wife's adultery. Were this the case, the court might be disposed to remand or reverse. However, Judge Mathias made clear that he was not giving custody to the father in order to punish the wife for her adultery. The basic issue in any custody determination is which party will further the best interests of the child. *Neuwiller v. Neuwiller,* 257 Md. 285, 262 A. 2d 736 (1970) ; *Orndoff v. Orndoff,* 252 Md. 519, 250 A. 2d 627 (1969) ; *Shanbarker v. Dalton,* 251 Md. 252, 247 A. 2d 278 (1968). Thus a finding of adultery is relevant to the extent that it may affect the welfare of the children. In cases where the Chancellor has found that the party guilty of the adultery has

ceased the relationship with the paramour, the Court has upheld the Chancellor's decision to grant custody to the guilty party. This is especially true where the mother has been at fault and young children are involved. See *Kauten v. Kauten*, 257 Md. 10, 261 A. 2d 759 (1970); *Ouellette v. Ouellette*, 246 Md. 604, 608, 229 A. 2d 129 (1967). However, where the Chancellor, who has the parties before him, is convinced that the adulterous relationship will adversely affect the welfare of the child this will usually be enough to overcome the presumption that the mother is best fit to have custody of a young child. In the instant case, Judge Mathias found "that the adultery was performed and conducted continuously and openly with the children involved in it. By that I mean keeping these children living at Landover Road and thinking that this man was their father." This finding is supported by the testimony of the neighbor who was under the impression that Mr. Green was appellant's husband. We, therefore, conclude that the Chancellor did not abuse his discretion in awarding custody to the father.

*Decree affirmed, appellee to pay costs.*